UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXEED INDUSTRIES, LLC, EXEED ELECTROCAB, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>OMAR YOUNIS a/k/a "Brian Kamal" a/k/a "Alex M. Nessar," MOHAMMAD YOUNIS, MOHAMED FAYYAD AL-HASSAN RIYAL, WABEL INTERNATIONAL FOR ELECTRIC AND ELECTRONIC MATERIALS LLC,<br><br>Defendants. | No. 1:15 C 14<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for leave to file an amended complaint by Plaintiffs Exeed Industries LLC and Exeed Electrocab LLC (together, "Plaintiffs" or "Exeed"). Plaintiffs seek to amend their complaint pursuant to Fed.R.Civ.P. 15(a) to respond to certain arguments raised in Defendants' motion to dismiss. Defendant Omar Younis ("Younis") opposes the motion as futile. For the following reasons, the Court grants Plaintiffs' motion for leave to amend.

### BACKGROUND

Plaintiff Exeed Industries is a limited liability company incorporated and based in the United Arab Emirates ("UAE"), where it specializes in industrial building materials, agriculture, and international industrial investments. Plaintiff Exeed Electrocab is Exeed Industries' subsidiary, likewise incorporated in the UAE.

Omar Younis and his brother and co-Defendant Mohammed Younis are former employees of Exeed Electrocab. Plaintiffs have sued the brothers as well as Omar Younis'

1

father-in-law Mohamed Fayyad Al-Hassan Riyal and the Younis family's co-owned company Wabel International, which is based in Jordan (collectively "Defendants").

Plaintiffs filed their complaint in this court on January 2, 2015, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraudulent concealment, breach of fiduciary duty, and fraudulent transfer.[1] According to Plaintiffs, Defendants set up a secret illegal kickback scheme no later than July 2005, while employed with Exeed. In furtherance of the scheme, Defendants allegedly inflated contract prices and duped certain of Plaintiff's suppliers into paying fraudulent invoices to the Younises directly or to their company Wabel International. Defendants falsely represented these fees as a condition for contracting with Plaintiffs. Defendants then pocketed the proceeds, in some cases via wire transfers made by suppliers with offices in the U.S. Two of those wire transfers were actually initiated by a Chicago bank; the others presumably originated abroad.

From 2009 to 2011, Plaintiffs allege that Omar Younis used the kickback proceeds to purchase properties in California and Illinois, for which he allegedly used American bank accounts. Throughout the scheme, Plaintiffs claim Defendants fraudulently concealed their misconduct through active misrepresentation, by adopting aliases to deal with the suppliers, by strategically resigning from Exeed when suspicions arose, by fleeing to the United States, by formally changing Omar Younis' name in the United States, by orchestrating fraudulent transfers of the U.S. properties from Omar to Mohammed, and by misrepresenting Wabel International's business activities in their bid to dissolve the corporation. Wabel was cancelled and liquidated in May of 2015 after it had been named as a defendant in this case.

---

[1] In September 2010, prior to the filing of this suit, a criminal case against Younis was filed in Abu Dhabi "for embezzlement relating to his employment with Exeed." Omar Younis was convicted in absentia in the United Arab Emirates in 2011. A subsequent criminal case was filed in Jordan in December 2010, this time against Younis and Riyal, but has since been dropped.

Omar Younis filed a motion to dismiss this case on June 17, 2015 in which he argued, in part, that the complaint failed to allege sufficient links between Defendants' misconduct and the United States to support jurisdiction under RICO. Plaintiffs then filed their motion for leave to amend the complaint to respond to the jurisdictional arguments in the motion to dismiss. Plaintiffs also submitted a proposed amended complaint (PAC) with additional detail and new allegations. Younis objects to this motion, arguing that it would be futile to permit Plaintiffs to amend their complaint as requested because even the amended complaint would not survive Younis' motion to dismiss.

**LEGAL STANDARDS**

**I. Motion to Amend**

"Although Federal Rule of Civil Procedure 15(a) instructs that leave to amend shall be freely given 'when justice so requires,' a district court may deny a [party] leave to amend if 'there is undue delay, bad faith or dilatory motive.'" *Sound of Music Co. v. Minnesota Mining & Mfg. Co.,* 477 F.3d 910, 922 (7th Cir.2007) (citations omitted). The Court may also deny a motion for leave to amend if it finds that "undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" would occur. *Id.* at 922–23 (citations omitted). "[F]utile repleadings include restating the same facts using different language, . . . failing to state a valid theory of liability, . . . and the inability to survive a motion to dismiss . . ." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994).

**II. Motion to Dismiss**

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) does not test the merits of a claim, but rather the sufficiency of the complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). This "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir.2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)). In deciding a 12(b)(6) motion, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *Id.* at 1521. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007).

## ANALYSIS

**1. Statute of Limitations**

Younis first argues that Plaintiffs' RICO claim is statutorily barred. RICO claims are subject to a four-year statute of limitations, *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987), which begins to run when the plaintiff knew or should have known of its injury. *Rotella v. Wood*, 528 U.S. 549, 555 (2000). Younis argues that Exeed should have known of the injury in September 2010 when the Abu Dhabi criminal case was filed. Thus, by Younis' calculation, the four-year statute of limitations had already elapsed when Plaintiffs filed their complaint on January 2, 2015.

In their Reply, Plaintiffs assert that the UAE and Jordan criminal cases involved a different scheme dealing solely with a single Italian supplier located in Italy. They claim they did not know, nor should they have known, of the United States-linked injury in this case until

4

January 11, 2011. On that date, Exeed received copies of bank records through the Jordanian litigation that revealed wire-transfer information and the identities of other suppliers involved in the kickback scheme. According to Exeed, it was not until they reviewed those records that they learned of the United States-related events giving rise to their RICO claim.

Plaintiffs also allege that the Defendants fraudulently concealed their misconduct by misrepresenting contracts, concealing the scope of the scheme, withholding or intentionally destroying data, using a pseudonym to deal with suppliers, and fleeing to the United States, among other things. Thus, they argue that the clock should be equitably tolled as Defendants wrongfully obstructed Plaintiffs' ability to learn of and timely investigate the actions giving rise to the RICO claim.

Construing all reasonable facts in the light most favorable to the Plaintiff, and without deciding whether or not Defendants did in fact engage in an unlawful cover-up, I find that Plaintiffs did not and could not reasonably have learned of the injury at issue until January 11, 2011. Thus, the January 2, 2015 filing falls within the four-year statutory window.

**2. Links Between Defendants and the United States**

Younis next asserts that both the original complaint and the PAC fail to allege sufficient links between Defendants and the United States to support a domestic RICO claim. Younis cites the Second and Ninth Circuits for the presumption that RICO has no extraterritorial application unless a RICO claim is predicated on a statute with clear extraterritorial applicability, and that the mail and wire fraud statutes underlying this case are not extraterritorial. *See, e.g., Norex Petroleum Ltd. v. Access Ind., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010), *cert. dismissed*, 133 S.Ct. 21 (2011); *United States v. Chao Fan Xu*, 706 F.3d 965, 974-975 (9th Cir. 2013); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 137, 141 (2d Cir. 2014), *cert. granted*, 2015 WL 4575964

5

(2015). These cases read RICO to require "sufficient domestic conduct" or contact in order to support a domestic claim. *European Cmty.*, 764 F.3d at 141; *Chao Fan Xu*, 706 F.3d at 975. Younis points out that Exeed itself has no U.S. presence and that Plaintiffs have not pleaded a sufficient nexus between the alleged racketeering acts and the United States. In Younis' estimation, the only relevant U.S.-based activity in both the original complaint and the PAC is the pair of Chicago-initiated wire transmissions in 2007 and 2008, which fails to establish a domestic pattern of racketeering activity.

However, both of Plaintiffs' complaints describe substantially more connections to the United States than Younis acknowledges. According to the complaints, Younis traveled to and from the United States to launder money here and purchase American properties with proceeds from the scheme. He also used American bank accounts and U.S. postal and wire services to complete property transfers and change his name, and he has maintained a U.S. residency with his brother dating back to the period of his employment with Exeed. Additionally, Plaintiffs allege that Defendants used U.S. wires to coordinate the cancellation of Wabel International. The suppliers involved in the alleged scheme also had operations in the United States at the time of the scheme and continue to maintain U.S. presences. These facts, in addition to the Chicago wire transfers, provide "sufficient domestic conduct" to support a domestic claim.

### 3. The Pattern-of-Racketeering Element

Next, Younis argues that Plaintiffs failed to allege a pattern of racketeering as required by RICO because the acts alleged in the PAC are not sufficiently continuous or numerous to constitute a pattern. In cases where a RICO claim with domestic and foreign elements is predicated on statutes without extraterritorial applicability, courts use two common approaches to determine whether the allegations constitute a pattern of racketeering: the "continuity plus

relationship" test and the enterprise test. The Seventh Circuit has not expressed a preference for either test, so I apply both here. *Borich v. BP, P.L.C.*, 904 F.Supp.2d 855, 861 (N.D. Ill. 2012).

### a. The "Continuity Plus Relationship" Test

Under the "continuity plus relationship" test, the Plaintiff must show "a relationship between the predicate acts as well as a threat of continuing activity." *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989)). A relationship exists where the criminal acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. Here, the alleged wire fraud, mail fraud, and money laundering involve the same set of Defendants and suppliers and harmed the same victim. Each predicate activity also allegedly furthered a common kickback scheme and subsequent cover-up. Thus, Plaintiffs have shown a relationship between the predicate acts.

Continuity can be closed-ended or open-ended. Closed-ended continuity describes scenarios where the criminal behavior has ended but "the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future." *DeGuelle*, 664 F.3d at 199 (quoting *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 473 (7th Cir. 2007)). The Seventh Circuit applies a multi-factor test when analyzing closed-ended continuity, weighing such factors as "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986). The inquiry is fact specific and does not turn on any one factor, *Id*. at 976, although the duration of the predicate acts has been called "the single most important aspect of the closed-

ended continuity analysis." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 781 (7th Cir. 1994).

Here, the alleged scheme unfolded from 2005 to 2013. The predicate acts include not just the two Chicago wire transfers but Defendants' travels to and from the United States in furtherance of the scheme, their use of U.S. mail and wires to coordinate and cover up the scheme, their purchase of U.S. properties with the kickback proceeds, their subsequent transference of those properties, and Omar Younis' use of the United States courts to formally change his name. Importantly, the scheme and its cover-up spans a period of eight years, substantially longer than the schemes in cases where courts have declined to find continuity. *See, e.g. Midwest Grinding Co., Inc., v. Spitz*, 976 F.2d 1016, 1024 (7th Cir. 1992) (finding no closed-ended continuity where activities lasted only nine months); *J.D. Marshall Int'l v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (no closed-ended continuity for a scheme lasting thirteen months); *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990) (no closed-ended continuity for an eighteen-month period).

Likewise, as listed above, the number and variety of predicate acts here encompasses numerous instances of wire fraud, mail fraud, and money laundering involving a host of knowing and unknowing participants across the United States and abroad. There are also multiple victims, including not just Exeed but also the duped suppliers and the companies involved in the manufacturing projects Defendants oversaw. The length, breadth, and complexity of this scheme distinguishes it from a non-continuous scheme "extending over a few weeks or months and threatening no future criminal conduct." *H.J. Inc.*, 492 U.S. at 242.

I find that the predicate acts do give rise to closed-ended continuity, which is sufficient to meet the continuity prong of the "continuity plus relationship" test. As such, I find that Plaintiffs

have shown a pattern of racketeering under that test and I need not discuss the alternative question of whether the scheme also demonstrates open-ended continuity.

### b. The Enterprise Test

Under the enterprise test, a Plaintiff must allege the existence of an "association-in-fact enterprise", defined as a group with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). This test is broadly defined and not especially rigorous. *Guaranteed Rate, Inc. v. Barr*, 912 F.Supp.2d 671, 686 (N.D. Ill. 2012). In this case, Plaintiffs have clearly alleged the three necessary elements of an enterprise by pleading that Defendants 1) shared a common purpose in carrying out the alleged kickback scheme, 2) were bound by business and familial relationships throughout the life span of the scheme, and 3) carried out various elements of the scheme over the course of eight years. In light of this, I find Plaintiffs have also met the enterprise test to demonstrate sufficient links to the United States to meet the domestic enterprise test.

### 4. The Money Laundering Claim

Younis declined to consider the money laundering claim in any of his aforementioned analyses because he argues that Plaintiffs did not properly allege any injury related to the money laundering. Accordingly, Younis argues that claim is duplicative and should be stricken. In Younis' view, Exeed's injury occurred when they paid the inflated invoices involved in the kickback scheme, and anything Defendants did with the ill-gotten gains after Exeed made its payment was irrelevant to and had no impact on the degree or content of Exeed's injury. Relatedly, Younis argues that because the injury occurred prior to the money laundering, the money laundering cannot be considered a proximate cause of Plaintiffs' injury, which is a

necessary element to support a RICO claim. *See, e.g., Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (citing *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).

This argument is unavailing. First, Plaintiffs allege they were in fact injured by Defendants' post-payment activities because many of those activities—for instance, the transfer of U.S. properties to Mohammed Younis, dissolving Wabel International, and changing Omar Younis' name—were undertaken in an effort to cover up the scheme and delay or prevent Exeed from discovering and remedying the injury. For this reason, these activities compounded the injury to Exeed and were properly included in Exeed's complaint.

Plaintiffs also note the Eleventh Circuit's rejection of the idea that money laundering cannot serve as the proximate cause of a RICO injury. In *Maiz v. Virani*, the Eleventh Circuit opined that "money laundering and other post-investment offenses may constitute predicate acts causing racketeering injury for which damages may be recovered . . ." 253 F.3d 641 (11th Cir. 2001). The Court noted in an investment fraud context that "[f]ocusing on the intial decision to invest as the only possible point of injury is misplaced" and, in that case, "money laundering and related post-investment offenses injured the Plaintiffs by allowing Defendants to continue to deprive the Plaintiffs of the use and benefit of that portion of Plaintiffs' investment which would have remained in the partnerships' accounts had Defendants not engaged in self-dealing." *Id*. at 674.

I agree with the Eleventh Circuit on this point and find the same analysis applicable in the case at hand. Defendants' money laundering activities, insofar as they contributed to the cover-up and delayed prosecution, were an integral part of the alleged racketeering scheme and exacerbated the injury to the Plaintiffs, defrauded suppliers, and other victims of the scheme.

**5. Forum Non Conveniens**

Finally, Younis seeks to remove the case from this court for *forum non conveniens* due to the parties' arguably stronger ties to the UAE and Jordan. I reject this argument. Plaintiffs rightly point out that Younis himself fled to the United States from the Middle East, and equitable estoppel thus prevents him from arguing that the United States—his chosen residence and the country where he owns property, has conducted business, and has engaged in many of the transactions that form the basis of this case—is an inconvenient forum for litigation. Indeed, Plaintiffs allege that Omar Younis continued to engage in fraudulent transfers and cover-up activities in concert with his co-Defendants even after he came to permanently reside in Illinois in 2010, meaning that Younis resided in the United States during roughly half the alleged length of the enterprise. (Plaintiffs believe the same to be true of Mohammed Younis, although his California residency is currently unconfirmed.) As such, I decline to remove this case for *forum non conveniens* on equitable estoppel grounds.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for leave to amend its complaint. Plaintiff is to file its amended complaint by February 9, 2016.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: January 12, 2016