UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EXEED INDUSTRIES, LLC, EXEED ELECTROCAB, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> OMAR YOUNIS a/k/a "Brian Kamal" a/k/a "Alex M. Nessar," MOHAMMAD YOUNIS, MOHAMED FAYYAD AL-HASSAN RIYAL, WABEL INTERNATIONAL FOR ELECTRIC AND ELECTRONIC MATERIALS LLC, <br><br> Defendants. | No. 15 C 14 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Riyal's Motion to Dismiss For Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), combined pursuant to Fed. R. Civ. P. 12(g). For the following reasons, Defendant's Motion is granted.

**I. BACKGROUND**

Plaintiff Exeed Industries is a limited liability company incorporated and based in the United Arab Emirates ("UAE"), where it specializes in industrial building materials, agriculture, and international industrial investments. Plaintiff Exeed Electrocab is Exeed Industries' subsidiary, likewise incorporated in the UAE.

Defendant Mohamed Fayyad Al-Hassan Riyal is the father-in-law of Defendant Omar Younis, who, along with his brother, Defendant Mohammed Younis, are former employees of Exeed Electrocab. Plaintiffs have sued the brothers as well as Riyal and the Younis family's co-owned company Wabel International, which is based in Jordan (collectively "Defendants").

1

However only the first count—violation of the RICO statute—applies to Defendant Riyal.

On January 2, 2015, Plaintiffs filed their complaint in this court, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") by Riyal and the Younis brothers. Plaintiffs allege that Riyal's role was to act as a fraudulent "agent" during supplier agreements, to transfer the proceeds derived from an illegal kickback scheme in and out of the United States by use of his bank account, and to assist Defendants Mohammed and Omar Younis in purchasing real estate using these illegal proceeds.

According to Plaintiffs, Defendants set up a secret illegal kickback scheme no later than July 2005 while the two brothers were employed by Exeed. In furtherance of the scheme, Defendants allegedly inflated contract prices and duped some of Plaintiff's suppliers into paying fraudulent invoices. In some cases, payments were made directly to the Younis brothers; in others, they were either made to their company Wabel International, with Defendant Riyal at times falsely acting as an "agent" of the company, or to a nonexistent company, "Mohamed Riyal Engineering and Marketing Consulting Co." ("MREMC"). Plaintiffs allege that payments made to MREMC were actually made to Riyal's personal bank account, as were some of the payments supposedly made to Wabel. On several occasions, these payments were made via wire transfer from suppliers with offices in the U.S., and two of the transfers originated from banks in Chicago. Plaintiffs allege that the total amount of illegal proceeds deposited into Riyal's account exceeded 15 million dollars.

Plaintiffs allege that in 2006, some of the illegal proceeds deposited in Defendant Riyal's account were moved via wire transfer into U.S. bank accounts that were ultimately used by Defendant Omar Younis to purchase land in California and Illinois. Although Defendants Omar Younis and Mohammed Younis are now alleged to live in the United States, Defendant Riyal is

believed to reside in Jordan.

On April 8, 2015, this Court authorized email service on Riyal pursuant to Federal Rule of Civil Procedure 4(f)(3). Plaintiffs attempted to provide Riyal with service of process via an email address obtained from Defendant Omar Younis; however, they received a response that the email could not be delivered to that address. After engaging in limited discovery, Plaintiffs obtained a different email address for Riyal from Defendant Omar Younis, which they used to successfully serve Riyal on September 24, 2015. Plaintiffs' Motion to Deem Service Effective was granted on June 1, 2016.

Defendant Riyal filed a motion to dismiss Count I of Plaintiff's Amended Complaint on August 12, 2016 based on several theories. First Riyal argues that this Court lacks personal jurisdiction over Riyal because he lacks sufficient contacts with Illinois to establish either general or specific personal jurisdiction, and thus Count I must be dismissed under Rule 12(b)(2). Second, Riyal argues that service of process on Riyal was inadequate, and thus Count I must be dismissed under Rule 12(b)(5). Third, he argues that the Amended Complaint does not allege a domestic injury as required under *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 (2016) and thus Count I must be dismissed under Rules 12(b)(1) and 12(b)(6). Because Defendant's third argument is dispositive, I will begin there.

**II. DISCUSSION**

**A. Legal Standard**

A motion under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the

complaint and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) asks the court to dismiss an action over which it allegedly lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir.2003), *overruled on other grounds by Minn–Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir.2012). All reasonable inferences are drawn in favor of the plaintiff, and all well-pleaded allegations are accepted as true. *Long v. Shorebank Dev. Corp.,* 182 F.3d 548, 554 (7th Cir.1999). Finally, when considering a Rule 12(b)(1) motion to dismiss, the court may look beyond the allegations of the complaint and may consider other submitted evidence. *See Johnson v. Apna Ghar, Inc.,* 330 F.3d 999, 1001 (7th Cir.2003) (quoting *id*.)

**B. Domestic Injury**

Section 1962(c) of RICO, invoked by Plaintiffs in this action, makes it unlawful for an individual employed by or associated with an enterprise to conduct that enterprise's affairs through a pattern of racketeering activity. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2097, 195 L. Ed. 2d 476 (2016). Section 1964(c) creates a private cause of action allowing any individual who is "injured in his business or property by reason of a violation of section 1962" to sue in federal court and recover "treble damages, costs, and attorney's fees." 18 U.S.C. § 1964(c) (2012). Earlier this year, however, the Supreme Court in *RJR Nabisco* held that Section 1964(c) "requires a civil RICO plaintiff to allege and prove a *domestic* injury to business or property and does not allow recovery for foreign injuries." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct.

4

2090, 2111, 195 L. Ed. 2d 476 (2016) (emphasis added).

The Court in *RJR Nabisco* introduced a two-prong test to determine whether a statute applies extraterritorially. *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2099-101 (2016). First, the underlying presumption against extraterritoriality must be overcome in explicit terms. *Id.* Where there is no clearly expressed congressional intent to apply a statute extraterritorially, the statute will be construed to apply only domestically. *Id.* at 2100. If the statute is found not to be intrinsically extraterritorial at step one, courts examine whether the conduct relevant to the focus of the statute occurred in the United States. *Id*. at 2101. Generally speaking, where the conduct relevant to the focus of the statute "occurred in a foreign country, then the case involves an impermissible extraterritorial application *regardless of any other conduct that occurred in U.S. territory*." *Id*. (emphasis added). The Court held that Section 1964(c) does not overcome the presumption against extraterritoriality, *id.* at 2106, and thus, a plaintiff with claims under 1964(c) must demonstrate a domestic injury to his business or property in order to apply RICO domestically. *Id.*

Plaintiffs urge this Court to adopt a broad "continued deprivation" standard in defining domestic injury, focusing on the fact that Plaintiffs have been deprived of assets that are now—and, without judicial intervention, will continue to be—tied up in the United States. *See Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) (implicitly applying this standard in a pre-*RJR Nabisco* RICO case).

The few cases to address the issue of domestic injury post-*RJR Nabsico* have interpreted it to mean that an injury arises where it was initially suffered by the plaintiff. *E.g.*, *Bascuñan v. Daniel Yarur ELS Amended Complaint*, No. 15-CV-2009 (GBD), 2016 WL 5475998, at *6 (S.D.N.Y. Sept. 28, 2016) ("Defendants' proposed test, which focuses on the *plaintiff* and where

5

the alleged injury was *suffered*, is the appropriate approach to determine whether a plaintiff may maintain a private cause of action under § 1964(c).") (emphasis in original); *see also Uthe Tech. Corp v. Harry Allen & Aetrium, Inc.*, No. C 95-02377 WHA, 2016 WL 4492580, at *3 (N.D. Cal. Aug. 26, 2016) (granting the defendants' motion for summary judgment because "[n]o injury occurred in the United States"); *cf. United States v. Thomas*, No. 15-10000, 2016 WL 4254990, at *1 (9th Cir. Aug. 12, 2016) (citing *RJR Nabisco* and finding a criminal RICO indictment alleged sufficient contacts with the United States where: (1) the organization operated principally in Las Vegas, (2) members dumped stolen credit and debit card data from the United States, (3) sold personal data stolen from American victims, (4) manufactured and sold counterfeit driver's licenses to members, and (5) used protected drop sites in the District of Nevada to protect the criminal enterprise).

Here, the injury alleged was not initially suffered by Plaintiffs in the United States, nor have Plaintiffs maintained a United States presence, either at the time of the alleged scheme or now. Plaintiffs point to the fact that the illegally obtained kickback proceeds ultimately financed land purchases in the United States, but these are downstream effects of the initial injury that impacted Plaintiffs in the UAE, where their business and economic operations are centered.

In addition, the fact that two of the wire transfers to MREMC were initiated from Chicago does not create a domestic injury. This U.S.-based conduct may be related to the central scheme but it is not integral or pervasive enough to overcome the fact that the bulk of the illegal racketeering activities are alleged to have occurred abroad. *See RJR Nabisco*, 136 S.Ct. 2090 at 2101 ("If the conduct relevant to the statute's focus occurred in a foreign country, then the case involves an impermissible extraterritorial application *regardless of any other conduct that occurred in U.S. territory*.") (emphasis added). Likewise, the fact that a large number of

Plaintiff's suppliers have offices in the United States does not speak to where the injury was felt by the Plaintiffs themselves—that question can only be answered by looking to Plaintiffs' business operations in the UAE.

In the context of Plaintiff's Motion for Leave to Amend the Complaint, I gave more weight to domestic links like the two Chicago wire transfers and concluded that, in that context and at that time, Plaintiffs did establish sufficient links to support a domestic application of their RICO claim. Since that opinion was issued in January 2016, *RJR Nabisco* has clarified the analysis by which we determine whether a civil RICO plaintiff properly alleged domestic injury. My analysis has changed accordingly and I now find that Plaintiffs have not suffered a domestic injury to their business or property. Therefore, their RICO claim cannot be applied domestically and Count I is dismissed as to all Defendants.

Because this issue is dispositive, I need not proceed to Defendant's 12(b)(2) or 12(b)(5) claims.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted. Count I is dismissed as to all Defendants.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 8, 2016